Our next case is Lakin v. Casey's General Store, 5-17-0152. Mr. Ward. May I please support counsel? Good morning. My name is Mike Ward. I'm pressing on behalf of Casey's General Store. We have briefed a number of issues on appeal, but I'd like to address the Court with three particular issues that are raised on appeal. The first is the trial court's refusal to submit Casey's contributory negligence instruction, the court's submission of an adverse influence instruction, and the court's ruling barring Casey's from cross-examining the plaintiff on a job offer that he never received. I first address the issue of contributory negligence. Casey's contributory negligence instruction, number 24, it would have submitted to the jury if the court had submitted the instruction to take a proper lookout and use of proper care. Under Illinois law, the standard is that if an instruction is supported by some evidence in the record, the instruction should be submitted. With respect to contributory negligence, the practice almost across the board is that the issue is a jury question, a fact question for the jury to decide. But even if the evidence is undisputed, if the parties dispute the import of the evidence, the instruction should go to the jury. In this case, the trial court erred as a matter of law in failing to submit Casey's contributory negligence instruction. There was evidence from which the jury could conclude that there was contributory negligence on behalf of the plaintiff. There were four witnesses who testified, or I guess there were three witnesses who testified about the area of the fall concerning the state of the area before the plaintiff's accident occurred. The first was Temis Prestito, who was the plaintiff's girlfriend. She walked through the area of the fall before it occurred without incident. Nothing happened. There was Carrie Tolbert, Casey's employee, who was carrying a tray. She walked through the area without incident. And there was Paul Morantz, who was the defendant in the case, who was also the assistant store manager at the time. He walked through the area also without incident before the fall. There was also the videotaped evidence that the plaintiff admitted in his case which showed those individuals walking through the area without incident. The plaintiff himself testified that the size of the spill was two to three feet. And it dimensions a very large spill, not a very small spill. From that evidence, the jury could conclude, a jury could have concluded that there was some contributory negligence on behalf of the plaintiff. In this case, the court deprived the jury the opportunity to evaluate the evidence, decide that question, and to provide cases of a material defense to the plaintiff's claim. Simply under the standard that the court is guided by, bound by, in addressing the submission of evidence, submission of issues to the jury, if there is some evidence in the record that supports the theory of the issue, that the issue should be submitted to the court, an issue should only be taken away from the jury if all reasonable minds would reach the conclusion in this case that there was no contributory negligence on behalf of the plaintiff. It's not possible to say from the record that all reasonable minds would conclude that there was no contributory fault on behalf of the plaintiff. In this case, it's simply not possible to say, based on the evidence, that all reasonable minds would conclude that there was no contributory fault on the plaintiff's behalf. The plaintiff's counsel will argue, as brief in the brief, that there was an admission by Paul Morant that it was understandable why someone like the plaintiff would not have seen the spill. But that's not a judicial admission. It's an evidentiary admission. And even with that admission, it still does not deprive cases of the right to submit that issue to the jury, contributory fault to the jury, where there is some evidence of contributory negligence. Here, Mr. Lincoln testified and his girlfriend testified that they had experience with convenience stores, gas stations, that they were familiar with spills and the operation of stores. And Mr. Lincoln himself testified that the spill in question itself was two to three feet in width. Under that evidence, there was simply no way for the court to say, as a matter of law, that there was no possibility that a jury could conclude that there was no comparative fault, no contributory negligence on behalf of the plaintiff. And for that reason, the court should reverse the trial court's judgment for Mr. Lincoln for a new trial on all issues for failure to submit the issue of contributory negligence. I'll next address, Your Honors, the question of the court's adverse inference instruction, which is instruction number 22. There's a record there. It's not the clearest record of what happened, why with respect to the videotapes that were or were not produced. It was Casey's position all along that all videotape had been produced to the plaintiffs. There was an initial discovery before present counsel was involved, plaintiff's counsel was involved, where Casey's produced its video in response to prior counsel. What happened or why things did not make it or whether or not there was an issue, the record's not clear on what happened, why there was a videotape that was not in the possession of the plaintiff's counsel at the time of trial. But the important question with respect to the adverse inference is the decision, Your Honors, of Adami v. Belmonte, that the instructions not warranted were the evidence would have been favorable to the defendant in this case. There's simply no evidence that the video, in fact, the record discusses two videos. One was the video that would have been offered at the beginning of Casey's case. It defies logic that Casey's would offer a videotape at the beginning of its evidence that would have been adverse to it. Then there's the discussion with respect to the record between the court and counsel concerning the adverse inference instruction. There's the question of whether or not there was a third videotape, one that would have either shown the area of the spill from a different angle or whether there would have been a longer time period involved. But again, there's simply no evidence. There's nothing on the record that suggests or confirms or establishes that if there was a third videotape that had not been produced, that that videotape would have been adverse to Casey's. There's no suggestion that a longer video or a video from a different angle would have established that Casey's caused the spill, was on notice of the spill, or failed to clean up the spill if it was on notice of the spill. There's simply nothing of that in the record that supports that type of conclusion, that the evidence would have been favorable to the plaintiff and that it had been intentionally withheld by Casey's. Again, the decision in Adami v. Belmonte, that an adverse inference instruction should not be submitted to the jury where the evidence would have been favorable to the party in question. And there's simply no evidence here that if there was a third video or even the second video that was withheld, that it would have been adverse to Casey's. Again, it defies logic that Casey's would have authored a videotape At the beginning of this case, it would have been favorable to the plaintiff. It simply defies logic that you would, as a trial lawyer, measure a strategy that you would offer evidence that would support the plaintiff's claim. The final point that I'd like to raise with the Court this morning is the question of plaintiff's job offer. When he was deposed, Mr. Lakin testified that he had received a job offer from Thomas Wuller for a position that would have paid $75,000 a year, and that because of the injuries that he sustained in this slip and fall, that he was unable to pursue that opportunity that he had received from Mr. Wuller. After plaintiff's deposition, defense counsel deposed and sought and identified and located Mr. Wuller, and Mr. Wuller testified that he didn't know Mr. Lakin, he never offered a job to Mr. Lakin, simply did not know the man. Following that, the plaintiff filed a motion of limine at the beginning of trial, and plaintiff also withdrew his lost wage claim. And the Court sustained plaintiff's motion of limine and barred defense counsel from addressing the fabrication, the lie that Mr. Lakin made about his job offer on the grounds that the issue was collateral. I would submit to the Court that Mr. Lakin's fabrication, his lie, was not a collateral issue. An issue is collateral when it is not collateral if it goes to motive, interest, bias, or corruption. Here, the only person who was a witness to the slip and fall was Mr. Lakin. His credibility was essential to the determination of liability for this claim. It's uncontroverted that Mr. Lakin, in advancing his lawsuit against Casey's, lied that he had received a $75,000 job offer, and because of the slip and fall, he could not pursue that opportunity. It's uncontroverted that Mr. Wuller deposed, that he did not know Mr. Lakin, and that he never made an offer to Mr. Lakin. That kind of evidence is powerful evidence. It's not collateral. Where the credibility of Mr. Lakin as to the slip and fall is essential to his claim, he is the only eyewitness to the fall. He's the only person who could tell the jury what had happened. And he had lied in advancing his claim and pursuing a large lost wage claim. He fabricated a job offer that he never received from a man who did not know,  And that's why the trial court should not have been barred from admission into evidence, that the trial court should have permitted Casey's to cross-examine Mr. Lakin on the fact that he had lied concerning his job offer. That would have gone to his credibility. It would have gone to his interest, his motive, his bias, and, as the law says, to corruption. Simply put, the trial court erred in abuse of discretion in barring that evidence, barring Casey's opportunity to cross-examine Mr. Lakin on his fabrication, on his lie that he had received a significant job offer from a man who denied knowing him and who had denied ever making that offer. And for these reasons, I respectfully request the Court to grant Casey's a new trial on all issues. If the Court has no further issues, I'll reserve for rebuttal. Thank you, Your Honors. Thank you. May it please the Court, I'm Roy Drips for the plaintiff, James Lakin, and I want to start off with an overview about this case. Casey's trial strategy was geared to its denial that even though its own employees were in the exact same area, none of them saw or could have seen the puddle on the floor. Casey's denied having notice, whether it was constructive or actual. The Second Amendment complaint charged Casey's with negligence because it, quote, knew or should have known, unquote, of a dangerous substance on its floor. So plaintiff claimed Casey's had actual or constructive notice. The answer denied this claim, and the evidence in the case was that no one had constructive notice, plaintiff or defendant. Casey's employees testified at trial that they didn't know anything was on the floor, even though they were in exactly the same area as the plaintiff. And in the case of Mr. Moretz, who was not only the assistant manager but was Casey's corporate designee, he walked the exact same pathway that the plaintiff had and didn't see anything. Casey's trial strategy failed not because plaintiff was able to prove constructive notice, but when the EMT, Tim Peters, testified that Casey's had actual notice, that one of the employees told him a customer had told the employee that there was a spill and Casey's didn't have time to clean it up. Now, I want to just kind of footnote that thought for a minute because I'm going to come back to it when we talk about the missing videos. But Casey's position now is that plaintiff should have seen what it denied that any of its own employees saw or could have seen. And even if plaintiff is held to some greater standard when he's a business invitee or when he's coming in to get a drink from their drinking fountain or soda dispenser than he is when he's working at a convenience store on his own, even if he's supposed to have some greater expertise, the defendant's employees have the same expertise. They're working and they're actually on the job. They're supposed to be looking for this stuff. The only difference is that unlike the Casey's employees, plaintiff had no warning. And plaintiff's testimony was that he had no opportunity to see the spill before he fell. That testimony was unrebutted and uncontradicted. And defendant had the burden of proof on contributory fault. And in its briefs, it fails to cite to a single page of transcript or an exhibit to identify what act or omission by the plaintiff was negligent. Now, I want to talk a little bit about the waiver problem that Casey's has in this case before I move on to the merits of the contributory fault instruction. But defendant waived any claim of instructional error by failing to tender a proper instruction and by failing to object during the instruction conference on the same grounds now raised on appeal. Before instructional error will be considered, a party must tender the correct instruction. Defendant failed to tender a correct instruction. And the reason I say that is because defendant's instruction told the jury to assess contributory fault if they found that plaintiff failed to keep a proper lookout or failed to use proper care. Failed to keep a proper lookout doesn't tell the jury any fact to find. There is nothing in that instruction for the jury to find. Even worse, it assumes that a proper lookout would have revealed something the plaintiff could have avoided. And failed to use proper care simply asks the jury to find plaintiff negligent without a factual basis. This court, in the Howitt case, H-O-W-H-E, and it's discussed at length in the briefs, but it's at 305 U.S. 3rd 183, found a virtually identical instruction to be reversible error. And so that's why I feel comfortable saying that the instructional problem they have is serious. This court already condemned the instruction that they tendered, and they didn't tender an alternate. In Howitt, this court reviewed the applicable authorities, including Supreme Court decisions, and held that the allegations in the instruction were impermissibly vague and conclusory. And what were at issue in Howitt were failed to keep a proper lookout and failed to observe the conditions then and there present. Arguably better than the instruction tendered by the defendant in this case. Howitt held that giving that instruction was reversible error. Under Howitt, the defendant's tendered instruction in this case would also have been reversible error. At a minimum, it was not in proper form, and the trial court did not abuse its discretion in rejecting it. Defendant chose not to tender an alternate instruction. And defendant's reply brief at page 6 argues for the first time in this case that contributory negligence is evidenced by his fault. Now, negligence is not a distinct concept from contributory negligence. The Supreme Court has made that clear. It's one animal. And if this court holds that simply having an accident is evidence of negligence for either side, we're going to do related summary judgments on almost all cases in which the defendant has no responsibility other than the fact that the plaintiff fell. The Supreme Court in Mort v. Walter, a 1983 case, said the only circumstantial evidence that would support plaintiff's theory of the incident is the fact that the accident occurred. That fact in and of itself is ordinarily insufficient to raise an inference of negligence. And to the same effect is, I think it's Publication Court v. Chicago River, an Indiana railroad company, and it is well settled that a claim of negligence may not be inferred from the mere fact of an accident or injury. And that's what the defendant is arguing, though, the exact opposite of what the Supreme Court and what the appellate court have said in virtually identical circumstances. So defendant failed to submit a proper jury instruction, and its claim of error is therefore waived. But Casey's claim fails on the merits because defendant failed to have an actual adequate factual basis in the record to submit contributory fault to the jury. Mr. Dripps, was there a video that showed the entire fall? Yes. From beginning to end? There was one from a different angle that was not provided to the plaintiff. We found out about that in trial during a break in defendant's case where the defendant's video technician was queuing up their video, and this was during a lunch break, and Judge Mudge kind of looked up at the screen and said, Well, I haven't seen that angle before, which piqued my interest because I hadn't seen it before either. And, yeah. And I'll tell you a little bit more about the videos in a second, but one of the problems with the video not being produced to us is Mrs. Tolbert described seeing herself walk carrying a tray of sandwiches, which is nowhere in any of the videos, which shows us that they gave us a truncated version. They cut out, we had four minutes and I think ten seconds of video, a little over four minutes. She said I saw five to ten minutes of video footage in preparation for my deposition. I saw myself carrying sandwiches. We believe that the video would have shown her customer spilling something, going up to a Casey's employee, saying, Hey, I spilled something, and then leaving, which is supported by what the EMT testified to. But the video didn't start until well after that. There's no spill in the four minutes that we were given, and it also did not show the plaintiff's fall. So let me, I'll loop back to that in just a second, if that's the answer to your question. Yes. In this case, no one said plaintiff should have seen the puddle. Now, Mr. Ward claimed that Mrs. Tolbert said it was three feet, or the plaintiff said it was three feet. That's after he fell. That's after he slipped, landed in it, and splashed it all over. So that has nothing to do with whether he should have seen it before or not. Nobody said it was three feet wide before he fell. Every witness agreed that he or she did not see the liquid before plaintiff fell, including the people who went right through the same area, plaintiff's girlfriend, Mr. Morens, Mrs. Tolbert. They're all in the same area, and nobody sees it. Casey's Rule 206-81 corporate designee, who is in law, the voice of Casey's, Casey speaks through Mr. Morens at the corporate designee deposition. He admitted it was understandable that plaintiff did not see the puddle, and he didn't just admit that someone liked plaintiff. He was asked, including the plaintiff, and he said yes. Now, whether that's an evidentiary admission or judicial admission doesn't matter because defendant never introduced contrary testimony. So even if it's an evidentiary admission that they were free to contradict, they didn't. They never said, oh, we think plaintiff should have seen it because. There's nothing like that in the record. Plaintiff came around a corner and fell. He fell immediately after turning. His testimony was, once I turned the corner, I fell. Plaintiff's view of what was immediately ahead of him around the corner was blocked by a Christmas display. And when Carrie Weigel Tolbert approached the area, she looked from the other side of the store, from the kitchen area, and didn't have the same point of view as the plaintiff. So defendant wants to say, well, three witnesses came through and didn't get hurt. Okay. There's a big difference between saying that and saying they didn't get hurt because they saw the substance, stepped around it, and avoided it. Nobody said that. So what they did say was they didn't see anything on the floor. Neither did plaintiff. So there's nothing to charge plaintiff with negligence in that respect. Defendant failed to request proportionate reduction of damages in its answer, and I'm not going to go into that, but what they pleaded were the same things condemned by the Howell case on proper lookout and proper care. And in Casey v. Basing, the Supreme Court placed the burden of pleading and proving contributory negligence on the defendant, and Casey's didn't either. Now, I want to get into one other thing before I move on. At an even more elemental level, defendant's theory of contributory fault was fundamentally flawed because defendant never specified the duty plaintiff owed. And we know that in any tort we have to show duty breach proximate cause. That goes for contributory fault as well. Defendant not only didn't discuss what duty plaintiff had, it's never identified the source of any duty in the record. And I want to discuss three Illinois Supreme Court cases, and they're discussed in my brief at page 25. Clarkson v. Wright says, a plaintiff has no duty to anticipate the negligence of another person. Ward v. Kiemart, which is a seminal case and open and obvious, also says there is no duty to anticipate the negligence of another person. Defendant's argument hinges on the exact opposite, that somehow plaintiff had a duty to anticipate negligence by cases or by another customer. But Clarkson v. Wright and Ward v. Kiemart foreclosed that argument. The third Illinois Supreme Court case I want to talk about is Junker v. Ziegler, in which the Supreme Court held that a plaintiff's duty to protect himself only arises once the danger becomes known. And that's important. In Junker v. Ziegler, the people were duck hunting, there was a shot, and the Supreme Court said if that one had gotten the plaintiff, no contributory fault. But it wasn't the first shot that got him, it was the second shot. And he had an obligation to take cover after he heard the first shot. There was no first shot in this case. Plaintiff fell immediately when he rounded the corner, his view was obstructed by a Christmas display, and there is nothing in the record that would trigger any duty on the part of the plaintiff to protect himself, much less show a breach of that duty. Now, the defendant's Rule 206A1 corporate designee, who is Casey's voice, speaks for Casey, and whose admissions are the admissions of the corporate defendant under the rule. This is in the record at pages 106 to 107. No one intentionally put the liquid on the floor, plaintiff didn't put anything on the floor, plaintiff's girlfriend didn't bring anything into the store that could have been the liquid, plaintiff's girlfriend's drink was a soda which would have been sticky, this liquid was clear and not sticky, the corporate rep walked through the area just before the fall and didn't see the liquid. The corporate representative testified, as Casey's, if I didn't see something, it's understandable that no one else, including plaintiff, would see it. That admission was never contradicted, clarified, or explained by Casey's. So it doesn't matter whether it's evidentiary or judiciary. Remaining would be futile in this case because the other thing that the defendant said was there is nothing that plaintiff should have done that he failed to do in order to avoid injury, and there's nothing that he did that he should not have done to avoid injury. I don't know how you get around that on a summary judgment motion on remand when the corporation says he didn't do anything wrong, he didn't do anything, he didn't fail to do anything he should have. So there was no error in refusing defendant's instruction on contributory fault. There's been no question on damages in this case, so even if the court thinks it should be remanded for trial on contributory fault, it should just remand on that issue and leave the damage award intact. Now, I'm not going to discuss the instruction issue on warrants because Mr. Warren didn't address that. We've started a little bit on 5.01, but this is a case that cries out for application of 5.01. We've got them providing truncated, shortened versions of videos. We've got them saying to the witnesses, here, watch this, it's stuff they never gave the plaintiff, and it's not just missing angles, it's minutes and minutes of footage that we didn't get, and they never offered an explanation. The only explanation was that the defendant's lawyer said, I don't know. Mr. Warren's case was asked, do you have any idea why Casey's didn't give those to us? He says, I don't know. So Casey's was given the opportunity to explain and didn't. So there was five to ten minutes of missing footage from various angles before plaintiff's fault in the sole custody of Casey's that should have been produced. The reason they didn't produce it is because, as I told Justice Chapman, we think that what happened was the video showed the spill on the floor and nothing done at all to clean it up, no signs put out before the plaintiff was injured. It was therefore within the trial court's discretion to submit it. The last thing I want to talk about was Defendant didn't make an offer of proof on the impeachment on the lost earnings. They didn't identify any questions to plaintiff or questions and answers to the witness, despite a promise by defendant's counsel to make an offer of proof. They never did that. And so even though I believe the brief discusses the collateral impeachment issue adequately, you don't need to get into that, I submit, because the failure to provide an offer of proof dooms their claim on this. And there's no evidence that plaintiff lied because there was no offer of proof. So for those reasons, I ask that the court affirm the judgment. Thank you. May I please, the court, counsel? Plaintiff's counsel refers to the testimony of the EMT, Mr. Peters. He was the one who testified that there was someone who told him that there was a spill and it had been failed to clean up. That testimony was not undisputed at trial.  that that was the case in his testimony. With respect to the duty question, with respect to Mr. Lakin's duty of care, instruction number 24 followed IPI 128.2. It was modeled and patterned after that instruction. And unlike the instruction that was found effective in the Howard case, it included the statement of duty that Mr. Lakin failed to exercise ordinary care for his own safety. That language was omitted from the instruction in Howard, which was ultimately the language that the court found to be, to render that instruction defective and prejudicial. It was that failure to include that language, failure to exercise ordinary care for his own safety. In this case, the instruction submitted by Casey's, testified by Casey's instruction number 24, did include that statement of duty as required by IPI 128.2. With respect to pleading, paragraph 3 of Casey's answer pleaded the defense of retributory negligence. With respect to the offer of proof, with respect to the job offer, the law is also that if the court clearly understands the evidence, no offer of proof is needed. And that's Dillon v. Evanston Hospital. In this case, Judge Mudge understood what the evidence was. Attached in response to Plaintiff's motion limited was a deposition of Mr. Waller. The plaintiff's deposition was also part of the record. It was very, very clear on the record before Judge Mudge at that point, that Mr. Waller did not know the plaintiff, did not make a job offer. Under those circumstances where Judge Mudge was fully aware of what the evidence was on the job offer, there was no need under Illinois law for a formal offer of proof to be made. And that goes back to the credibility, as I mentioned in my opening argument, of Mr. Lakin. It is correct, as Plaintiff's counsel says it, that there was a theory of defense that there was no notice of a spill. Mr. Lakin, after the spill, describes the area of the puddle was two to three feet wide. If the liquid was truly of that dimension, then the jury should have been permitted to decide the question of juridical negligence. The question in terms of notice or lack of notice or whether he could not have done something further or did not see goes to credibility. If the plaintiff was willing to fabricate a job offer from an individual that he never met, who denied knowing him, who denied making the offer, it follows that the jury would be free to conclude that he would be less than truthful in other aspects of his claim. Therefore, the evidence with respect to the trial court's decision to bar the cross-examination on the lost job offer was not collateral, but goes to the heart of the case. It goes to Mr. Lakin's credibility. Again, he was the only individual who could tell the jury what had happened at the time of the fall. He was unequivocally caught in a fabrication and asserted the job offer. It was not collateral to the extent that the jury could conclude, based on that fabrication, that what else was Mr. Lakin not telling the truth about. And for these reasons, Your Honor, I would like to request the court to grant a new trial on all issues. Thank you. Thank you. Again, the court will take this under consideration and issue a ruling in due course.